UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Mark Morgan

     v.                                        Civil No. 10-cv-443-JL

Warren Dowaliby, Superintendent,
Strafford County Department of
Corrections, et al.[1]


## REPORT AND RECOMMENDATION


    Mark Morgan filed this action pursuant to 42 U.S.C. § 1983,
asserting that the conditions of his confinement at the
Strafford County House of Corrections ("SCHOC") violate his
constitutional rights.  The matter initially came before me for
preliminary review to determine, among other things, whether the
complaint stated any claim upon which relief might be granted.
See 28 U.S.C. § 1915A; United States District Court for the
District of New Hampshire Local Rule ("LR") 4.3(d)(2).  Upon
reviewing the complaint, I determined that it failed to state
any actionable conduct by SCHOC Superintendent Warren Dowaliby,
the only named defendant to the action.  I directed Morgan to
amend his complaint to name any defendant he wished to sue in

---

[1]In addition to Dowaliby, Morgan has named the following
defendants in this action: Gregg Gouchie, Strafford County House
of Corrections ("SCHOC") Corrections Officer Nelson (first name
unknown ("FNU")), SCHOC Sgt. FNU Brackett, SCHOC Cpl. FNU
Fisher, SCHOC Capt. FNU Pelkie, SCHOC mental health nurse
Cherryl (last name unknown), and the SCHOC Sexual Assault
Awareness Hotline.

this action, and to state, with specificity, what each of the named defendants did that violated his constitutional rights. Morgan has now filed three addenda to his complaint (doc. nos. 9-11). I will construe the complaint to consist of the original pleading (doc. no. 1) and the three addenda (doc. nos. 9-11), in the aggregate, for all purposes. For the reasons stated herein, however, I find that Morgan has failed to state any claim upon which relief might be granted, and I recommend that this action be dismissed.

## Standard of Review

Under this Court's local rules, when an incarcerated person commences an action pro se and in forma pauperis, the Magistrate Judge conducts a preliminary review. LR 4.3(d)(2). In conducting the preliminary review, the Court construes all of the factual assertions in the pro se pleadings liberally, however inartfully pleaded. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976), to construe pro se pleadings liberally in favor of the pro se party). "The policy behind affording pro se plaintiffs liberal interpretation is that if they present sufficient facts, the court may intuit the correct cause of action, even if it was imperfectly pled." Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997); see also Castro v. United States, 540 U.S. 375, 381 (2003) (courts may construe pro se

pleadings to avoid inappropriately stringent rules and unnecessary dismissals).  This review ensures that pro se pleadings are given fair and meaningful consideration.

To determine if a pro se complaint states any claim upon which relief could be granted, the Court must consider whether the complaint, construed liberally, Erickson, 551 U.S. at 94, "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S. Ct. 1937, 1949 (2009) (citation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  Inferences reasonably drawn from the plaintiff's factual allegations must be accepted as true, but the Court is not bound to credit legal conclusions, labels, or naked assertions, "devoid of 'further factual enhancement.'"  Id.  (citation omitted).  Determining if a complaint sufficiently states such a claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id. at 1950 (citation omitted).  Applying this standard in my review of the complaint, I find that Morgan has alleged the following facts in support of relief.

Background

Mark Morgan is a disabled[2] inmate at SCHOC.  While incarcerated at SCHOC, Morgan was placed in a cell with a federal detainee named Gregg Gouchie, an inmate Morgan believes to have a history of mental illness.  In September 2010, Gouchie assaulted Morgan by biting him, leaving a bitemark.  Gouchie also stabbed Morgan with a pen, resulting in a "wound" that required medical attention.  Morgan claims he has complained to SCHOC medical personnel about his wound and pain.  Morgan was given x-rays, but states that the SCHOC medical staff has not responded to his complaint of pain.

Morgan also claims Gouchie sexually assaulted him in some manner.  Morgan claims that since this assault, he has suffered from nightmares.  Morgan states he received a brochure outlining a number of ways that inmates at the SCHOC can obtain assistance after a sexual assault, including reporting the incident to a staff member, submitting a medical slip or inmate request slip, contacting the Strafford County Victim's Assistance Program by phone, calling the Sexual Assault Awareness Hotline, writing a letter to SCHOC Superintendent Warren Dowaliby, or writing a letter to the Office of the New Hampshire Attorney General.

---

[2]Morgan's complaint does not specify the nature of his disability.

4

Morgan states that he called the hotline number listed in the brochure and left a message, but got no response.

Morgan states that he reported the assault by Gouchie to SCHOC Corrections Officer ("C.O.") Nelson.  Morgan expected that Gouchie would be moved, as other perpetrators of inmate-on-inmate violence had been removed after assaulting their cellmates.  Instead, C.O. Nelson moved Morgan to B-Pod.  Morgan claims that C.O. Nelson failed to report the assault to Superintendent Dowaliby.  Morgan does not claim that he attempted to utilize any of the other methods of obtaining assistance suggested in the brochure except as described above.

Once on B Pod, Morgan states, he was threatened by three inmates there.  Morgan reported the threats to SCHOC Cpl. Fisher, who told Morgan he could stay on B pod or move to "the hole."  Morgan chose to move to the hole as he felt that was the safer option.

Although Morgan advised Cpl. Fisher that he was disabled, Cpl. Fisher made Morgan "dragg (sic) out [his] bin" which, I presume, meant that Morgan had to move his own belongings. Morgan states that he was in pain from having to do this, due to his disability, and that he also lost one of his mattresses and his pillow in the move.  Morgan states he also asked Cpl. Fisher for a picture of the wound he received from Gouchie, x-rays,

access to mental health, and to speak to an attorney, although he stated that he did not, at that time, have an attorney.

After the Gouchie assault, SCHOC Sgt. Brackett asked Morgan if he wished to press charges against Gouchie.  Morgan initially said he did not, out of fear of reprisal.  After speaking with a nurse named Cherryl in the SCHOC mental health department who told him that he and his family would be safe if he pressed charges, Morgan changed his mind.  When Morgan told Sgt. Brackett and SCHOC Capt. Pelkie that he wished to press charges, Sgt. Brackett asked Morgan whether he remembered reporting that he was simply engaging in horseplay with Gouchie when he was injured.  Morgan adamantly denied ever saying that and affirmed that he was assaulted and wished to press criminal charges against Gouchie.  Morgan believes that Gouchie has not been prosecuted for the assault.

Morgan states that after he saw Cherryl, he requested an appointment to speak with her again.  Morgan states that Cherryl refused to see him and that he was instead referred to a doctor who prescribed medication to treat Morgan's mental health issues.

Morgan states that he received a furlough to attend his sister's funeral.  When he was leaving for the furlough, one or more officers mentioned to Morgan that they were aware of this lawsuit.  Morgan asserts he was uncomfortable when the officers

6

mentioned the lawsuit, as it appeared to him that the officers were implying that they wanted to, or could, retaliate against him after his furlough.  Morgan does not claim that retaliatory acts were taken by any of the defendants at any time in response to this lawsuit.

Morgan's complaint does not set forth any specific acts committed by Dowaliby in derogation of Morgan's rights. Instead, Morgan states that Dowaliby is responsible for the acts of the other defendants in his supervisory capacity, as he should be aware of what SCHOC employees are doing.

### The Claims[3]

Construing the complaint liberally, I find that Morgan has asserted the following claims:

1.    Inmate Gouchie assaulted Morgan, causing him harm.

2.    C.O. Nelson endangered Morgan when he responded to Gouchie's assault on Morgan by moving Morgan to B-Pod, where he was threatened by other inmates, instead of moving Gouchie.

3.    C.O. Nelson endangered Morgan when he failed to report the assault by Gouchie on Morgan to SCHOC Superintendent Dowaliby.

---

[3]The claims, as identified herein, will be considered to be the claims for all purposes. If Morgan disagrees with the claims as identified, he must properly file either an objection to this Report and Recommendation or a motion to amend his complaint.

7

4.   SCHOC medical personnel have not responded to Morgan's complaint that he is in pain as a result of Gouchie's assault on him.

5.   Sgt. Brackett failed to assist Morgan in having criminal charges pressed against Gouchie for assaulting Morgan.

6.   Cpl. Fisher failed to remove the inmates that threatened Morgan on B-Pod from that housing unit, forcing Morgan to move to more restrictive housing conditions in "the hole" to insure his own safety.

7.   C.O. Nelson and Cpl. Fisher denied Morgan the equal protection of the laws when they moved him, rather than his aggressor, from his cell after he was assaulted.

8.   Despite being aware that Morgan was disabled, Cpl. Fisher forced Morgan to move his own belongings, causing Morgan pain.

9.   Cpl. Fisher improperly deprived Morgan of his extra mattress and pillow.

10.   Morgan's rights under the Americans with Disabilities Act, 42 U.S.C. § 12132 ("ADA"), were violated when Cpl. Fisher failed to reasonably accommodate Morgan's disability.

11.   SCHOC Nurse Cherryl was deliberately indifferent to Morgan's mental health needs by refusing to see him herself when he requested an appointment with her regarding his mental health issues.

12.  The SCHOC mental health treatment providers have not
helped Morgan with nightmares he has suffered since being
assaulted by Gouchie.

13.  SCHOC Officers made Morgan uncomfortable by implying
that they would or could retaliate against him for filing this
lawsuit.

14.  SCHOC Superintendent Warren Dowaliby failed to insure
that SCHOC staff acted properly to protect Morgan.

15.  Morgan did not receive requested assistance from the
SCHOC Sexual Assault Awareness Hotline.

Discussion

I.  <u>Section 1983</u>

Section 1983 creates a cause of action against those who,
acting under color of state law, violate federal constitutional
or statutory law.  <u>See</u> 42 U.S.C. § 1983[4]; <u>City of Okla. City v.
Tuttle</u>, 471 U.S. 808, 829 (1985); <u>Wilson v. Town of Mendon</u>, 294
F.3d 1, 6 (1st Cir. 2002).  In order for a defendant to be held
liable under § 1983, his or her conduct must have caused the

---

[4]42 U.S.C. § 1983 provides that:

> Every person who under color of any statute,
> ordinance, regulation, custom, or usage, of any
> State or Territory or the District of Columbia,
> subjects, or causes to be subjected, any citizen of
> the United States or other person within the
> jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law . . . .

9

alleged constitutional or statutory deprivation.  See Monell v.
Dep't of Soc. Servs., 436 U.S. 658, 692 (1978); Soto v. Flores,
103 F.3d 1056, 1061-62 (1st Cir. 1997).  Here, Morgan claims
that the defendants, all state actors, have violated rights
accruing to him under federal law.  As such, his claims arise
under § 1983.

II.  Medical Care

     "[T]he treatment a prisoner receives in prison and the
conditions under which he is confined are subject to scrutiny
under the Eighth Amendment."  Helling v. McKinney, 509 U.S. 25,
31 (1993); Giroux v. Somerset Cnty., 178 F.3d 28, 31 (1st Cir.
1999).  The pertinent Eighth Amendment prohibition on cruel and
unusual punishment applies to the states through the Due Process
Clause of the Fourteenth Amendment.  See Robinson v. California,
370 U.S. 660, 666-67 (1962).

     The Supreme Court has adopted a two-part test for reviewing
medical care claims under the Eighth Amendment.  See Farmer v.
Brennan, 511 U.S. 825, 834 (1994).  A court must first determine
if the prisoner has alleged facts sufficient to show that he or
she has not been provided with adequate care for a "serious
medical need."  Id.  Second, the court must determine if the
complaint contains sufficient allegations to show deliberate
indifference.  See id.  Allegations that simply show
"substandard care, malpractice, negligence, inadvertent failure

10

to provide care, and disagreement as to the appropriate course of treatment are all insufficient to prove a constitutional violation." Ruiz-Rosa v. Rullan, 485 F.3d 150, 156 (1st Cir. 2007).

A serious medical need is one that involves a substantial risk of serious harm to the prisoner if it is not adequately treated. See Barrett v. Coplan, 292 F. Supp. 2d 281, 285 (D.N.H. 2003); see also Gaudreault v. Mun'y of Salem, 923 F.2d 203, 208 (1st Cir. 1990) (defining serious medical need as one "that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention"). To be found deliberately indifferent, a prison official subjectively must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he or she must also draw the inference. See Farmer, 511 U.S. at 837. Deliberate indifference "may be shown by the denial of needed care as punishment and by decisions about medical care made recklessly with 'actual knowledge of impending harm, easily preventable.'" Ruiz-Rosa, 485 F.3d at 156 (citation omitted). "In order to establish deliberate indifference, the complainant must prove that the defendants had a culpable state of mind and intended wantonly to inflict pain." Braga v. Hodgson, 605 F.3d 58, 61 (1st Cir. 2010) (internal

11

citation and quotations omitted).  Deliberate indifference may
be found "in wanton decisions to deny or delay care, where the
action is reckless, not in the tort law sense but in the
appreciably stricter criminal-law sense . . . ."  <u>Watson v.
Caton</u>, 984 F.2d 537, 540 (1st Cir. 1993) (internal citation and
quotations omitted).  Deliberate indifference is not
demonstrated by an inmate's disagreement with his treatment, by
an allegation that better treatment than what was provided is
available, or by a difference of opinion among medical
professionals regarding diagnosis and treatment.  <u>See</u> <u>Feeney v.
Corr. Med. Servs.</u>, 464 F.3d 158, 162 (1st Cir. 2006) ("When a
plaintiff's allegations simply reflect a disagreement on the
appropriate course of treatment, such a dispute with an exercise
of professional judgment may present a colorable claim of
negligence, but it falls short of alleging a constitutional
violation" (internal citations omitted)).

    A.   <u>Serious Medical Need</u>

Here, Morgan alleges that he was injured when he was
assaulted by Gouchie.  Morgan states that he had a "wound,"
presumably from being stabbed with a pen, and bitemarks.  Morgan
states that due to the injuries sustained during the assault, he
has suffered pain.  Morgan fails to describe any "serious harm"
that has befallen him, or of which he is at risk, as a result of
his injuries.  At this time, Morgan has failed to state

sufficient facts for me to find that he has alleged a "serious medical need" for purposes of triggering the protections of the Eighth Amendment.

### B.   Deliberate Indifference

Even if Morgan had alleged a serious medical need, his claim would fail because he has failed to demonstrate deliberate indifference on the part of the defendants.  Morgan alleges that he was injured when Gouchie assaulted him, and that he sought medical assistance for those injuries.  Morgan states that, upon his request, he received x-rays and medical records related to his injuries.  These facts indicate that Morgan did, in fact, receive medical care for his injuries.  Morgan does not suggest that he was denied any necessary treatment for his injuries.  Morgan's assertion that the medical staff did not respond to his pain complaints, without more, is insufficient to describe deliberate indifference.  The constitutional right to adequate medical care in prison does not guarantee inmates that they will not endure any pain after an injury or that every request for medical treatment must be answered.  Further, the allegation of a failure to treat Morgan's pain, as the facts are alleged here, does not, without more, equate with demonstrating "the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment."  Erickson, 551 U.S. at 90 (quoting Estelle, 429 U.S. at 104-05) (internal quotations omitted).  Nothing in

13

the complaint suggests that any individual medical staff member at the SCHOC was aware that he had pain severe enough to constitute a "serious medical need" and unreasonably failed to act to address that pain.  Accordingly, I find that Morgan's assertions regarding the care of his injury and pain are insufficient to state a claim for the denial of constitutionally adequate medical care.

III. Mental Health Care

    A.   SCHOC Mental Health Department

The right to adequate medical care in prison includes a right to adequate mental health care.  See DesRosiers v. Moran, 949 F.2d 15, 19 (1st Cir. 1991); Torraco v. Maloney, 923 F.2d 231, 234 (1st Cir. 1991) (recognizing deliberate indifference to an inmate's mental health needs violates the Eighth Amendment). Morgan complains that he was denied an appointment with the mental health treatment provider of his choice, Cherryl.  As stated previously, Morgan has no right to receive the care of his choice.  See Feeney, 464 F.3d at 162.  Morgan admits he was seen by a doctor at the SCHOC who prescribed medication to treat his mental health needs.  Morgan has stated no actionable claim for Cherryl's failure to see him while he was otherwise adequately treated.

Morgan further claims that his mental health treatment failed to resolve one of his symptoms, his post-assault

nightmares.  Constitutionally adequate care does not mean a
complete resolution of every symptom.  Morgan admits that he
received mental health care, and the fact that he has an
unresolved mental health symptom is insufficient to establish an
Eighth Amendment violation for inadequate mental health care.

      B.    <u>SCHOC Sexual Assault Awareness Hotline</u>

      Morgan claims he attempted to obtain assistance after he
was sexually assaulted by contacting the SCHOC Sexual Assault
Awareness hotline.  Morgan left a message but received no
response.  Morgan has no constitutional right to access a
particular hotline, or to receive a return phone call.  Further,
it does not appear that Morgan attempted to obtain services
through any of the other means listed as available on the
brochure.  Where Morgan has admittedly received mental health
care, he has failed to allege facts that give rise to an
independent claim upon which relief might be granted for the
failure to respond to his hotline message.

IV.  <u>Conditions of Confinement</u>

      In order to successfully allege conditions of confinement
that constitute an Eighth Amendment violation, a plaintiff must
first plead facts which, if true, establish an objective
component -- that a "sufficiently serious" deprivation occurred.
<u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991).  Only deprivations
which deny an inmate "'the minimal civilized measure of life's

necessities' are sufficiently grave to form the basis of an
Eighth Amendment violation."  Id. at 298 (quoting Rhodes v.
Chapman, 452 U.S. 337, 347 (1981) (routine discomforts are part
of the penalty that criminal offenders pay for their offense
against society)); see also Hudson v. McMillian, 503 U.S. 1, 9
(1992) ("extreme deprivations are required to make out a
condition of confinement claim").  In addition, as with an
inmate's medical or mental health care claim, a subjective
element -- "deliberate indifference" on the part of the official
charged with responsibility for conditions of confinement which
constitute cruel and unusual punishment – must be shown to
establish an actionable constitutional violation.  See Wilson,
503 U.S. at 303; see also Helling v. McKinney, 509 U.S. 25, 32-
33 (1993).

     Morgan objects to the restrictive conditions of confinement
he experienced during his placement in B-Pod and in "the hole."
Morgan argues he should have been permitted to stay in his less
restrictive cell as he was the victim, not the perpetrator, of
the assault by Gouchie and the threats by B-Pod inmates.

     In addition to restrictive housing conditions, Morgan
alleges that when he was moved to "the hole," he was forced to
move his own belongings, causing pain, and he lost his extra
mattress and pillow.  Morgan does not describe any serious harm
that accrued from having to carry his belongings, or any medical

16

need for the extra mattress or pillow.  Further, Morgan does not
state that any of the conditions of his confinement in "the
hole," other than its being more restrictive than B-Pod,
constituted "extreme deprivation" or a deprivation of the
"minimal civilized measure of life's necessities," as required
to invoke the protection of the Eighth Amendment's prohibition
against cruel and unusual punishment.

V.   Property Loss

     Morgan asserts that the loss of his mattress and pillow
constitute an improper deprivation of property by Cpl. Fisher.
Claims alleging the theft, damage, loss or other
misappropriation of property are not actionable under 42 U.S.C.
§ 1983 where, as here, the state has an adequate post-
deprivation remedy available.  See Hudson v. Palmer, 468 U.S.
517, 533 (1984); N.H. Rev. Stat. Ann. §§ 541-B:9(II) & (IV),
541-B:14 (providing a post-deprivation means of recouping the
value of property loss attributable the State).

VI.  Reasonable Accommodation

     Title II of the ADA provides that "no qualified individual
with a disability shall, by reason of such disability, be
excluded from participation in or be denied the benefits of the
services, programs, or activities of a public entity, or be
subjected to discrimination by any such entity."  42 U.S.C.

§ 12132.  See United States v. Georgia, 546 U.S. 151, 153

(2006).

> Pursuant to the plain language of Title II, a
> plaintiff must establish: (1) that he is a
> qualified individual with a disability; (2) that
> he was either excluded from participation in or
> denied the benefits of some public entity's
> services, programs, or activities or was
> otherwise discriminated against; and (3) that
> such exclusion, denial of benefits, or
> discrimination was by reason of the plaintiff's
> disability.

Parker v. Universidad de P.R., 225 F.3d 1, 5 (1st Cir. 2000).

Title II of the ADA applies to inmates in correctional

facilities.  See Georgia, 546 U.S. at 154 (citing Pa. Dep't of

Corrs. v. Yeskey, 524 U.S. 206, 209-10 (1998)).  "[P]risons

provide inmates with many recreational 'activities,' medical

'services,' and educational and vocational 'programs,' all of

which at least theoretically 'benefit' the prisoners (and any of

which disabled prisoners could be 'excluded from participation

in')."  Pa. Dep't of Corrs., 524 U.S. at 210 (quoting 42 U.S.C.

§ 12132).  Morgan's assertion that Cpl. Fisher knew that Morgan

had a disability and failed to reasonably accommodate the

disability when he forced Morgan to move his belongings may be

an attempt to assert a claim under the ADA.  Morgan states that

he is disabled but gives no indication of the nature of his

disability, much less asserts that his disability qualifies him

for the protections of the ADA.  Even if he asserts a qualifying

disability, however, Morgan has failed to state that Cpl.
Fisher's requiring Morgan to move his own belongings constituted
a discriminatory refusal to provide a reasonable accommodation
to Morgan based on his disability.  The facts, as alleged, are
insufficient to support a claim under the ADA.

VII. <u>Equal Protection</u>

The Equal Protection Clause of the Fifth Amendment
guarantees that "all persons similarly situated should be
treated alike."  <u>City of Cleburne v. Cleburne Living Ctr.</u>, 473
U.S. 432, 439 (1985); <u>see</u> <u>Toledo v. Sanchez</u>, 454 F.3d 24, 33
(1st Cir. 2006).  To allege a denial of equal protection, Morgan
must assert that defendants, in treating him differently than
others similarly situated, intentionally or purposefully
discriminated against him on an improper basis.  <u>See</u> <u>Washington
v. Davis</u>, 426 U.S. 229, 239-40 (1976); <u>In re Subpoena to Witzel</u>,
531 F.3d 113, 119-20 (1st Cir. 2008).  "A discriminatory intent
or purpose means that the defendants 'selected or reaffirmed a
particular course of action at least in part because of, not
merely in spite of, its adverse effects upon an identifiable
group.'"  <u>Witzel</u>, 531 F.3d at 119 (quoting <u>Wayte v. United
States</u>, 470 U.S. 598, 610 (1985)).  Morgan here alleges that he
was treated differently than others – that he was moved when
other assault victims were allowed to stay in their cells.
Morgan has failed, however, to allege any improper motive in

19

this differential treatment, and none presents itself on the face of the complaint.  Accordingly, I find that Morgan has failed to state a claim that he was denied equal protection.

VIII. Endangerment

"A prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment."  Mosher v. Nelson, 589 F.3d 488, 493 (1st Cir. 2009) (quoting Farmer, 511 U.S. at 828).  Prison officials' duty to protect prisoners encompasses a duty to protect prisoners from violence at the hands of other inmates.  See Mosher, 589 F.3d at 493 (citing Calderón-Ortiz v. LaBoy-Alvarado, 300 F.3d 60, 63-64 (1st Cir. 2002) ("An inmate may sue a correctional facility under the Eighth Amendment for failure to afford adequate protection . . . from attack by other inmates.")).

In order to be deliberately indifferent to a risk of serious harm to an inmate, a prison official must be "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference."  Mosher, 589 F.3d at 494 (quoting Farmer, 511 U.S. at 837) (additional internal citations and quotations omitted)).  That standard "requires 'something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result' but 'something more than mere negligence.'"

20

Mosher, 589 F.3d at 494 (quoting Farmer, 511 U.S. at 835).
The First Circuit has allowed a claim of deliberate indifference
on the part of prison officials to the risk of inmate violence
to stand where: "jail officials inexplicably introduced a person
posing a known danger, another inmate who had repeatedly
threatened [plaintiff], into the holding cell where [plaintiff]
was being kept" when the officials were aware that the plaintiff
would be identified as an informant and would therefore be at
risk of harm as a result of the placement.  Giroux, 178 F.3d at
34.  "A prisoner . . . need not wait until he is actually
assaulted to obtain relief."  Purvis v. Ponte, 929 F.2d 822, 825
(1st Cir. 1991).  Inmates do not have to identify a specific
threat to obtain protection from prison officials; a claim for
deliberate indifference can be maintained where an inmate
alleges that a prison official had knowledge of facts from which
an inference could be drawn that a substantial risk of serious
harm existed, and failed to reasonably respond to that risk.
See Calderón-Ortiz, 300 F.3d at 36 (deliberate indifference
could be shown when officials who knew that dangerous inmates
and vulnerable inmates were housed together, and knew that
officials were not making regular patrols of the housing area,
resulted in protracted assault on vulnerable inmate).  An
allegation of deliberate indifference may be defeated where
officials responded reasonably to a known risk of harm.  See

Mosher, 589 F.3d at 494 (citing Burrell v. Hampshire Cnty., 307
F.3d 1, 8 (1st Cir. 2002)).

Morgan alleges that he was assaulted by Gouchie, an inmate
with known mental health issues.  Morgan further alleges that
Gouchie was a federal pretrial detainee.  Nothing in these
assertions, however, indicate that the SCHOC staff knew, or had
any reason to know, that Gouchie was assaultive or violent, or
posed any risk to Morgan, until Morgan was actually assaulted.
Morgan states that when he was assaulted, he was moved out of
Gouchie's cell to a different unit.  Further, Morgan states that
when he complained that he was threatened by inmates on his new
unit, he was immediately offered a safer, if more restrictive,
housing situation.  Nothing in Morgan's assertions indicates
that any threat to his safety, once known to the SCHOC staff,
was ignored or otherwise unreasonably handled.  Morgan has
therefore failed to state an actionable claim for endangerment.

IX.  Private Defendant

Morgan names Gouchie as a defendant to this action.  The
United States Constitution "erects no shield against merely
private conduct, however . . . wrongful." Blum v. Yaretsky, 457
U.S. 991, 1002 (1982).  A plaintiff claiming an infringement of
his civil rights by individual defendants must establish that
(i) the defendants deprived plaintiff of a right secured by the
Constitution or laws of the United States, and that (ii) the

22

defendants acted under "color of any statute, ordinance, regulation, custom, or usage, of any State or Territory of the District of Columbia."  42 U.S.C. § 1983; see Andresen v. Diorio, 349 F.3d 8, 13 (1st Cir. 2003).  In relation to the second requirement, a private actor can be held to be a state actor only under limited circumstances, none of which are present here.  See Blum, 457 U.S. at 1004 (describing circumstances under which private defendants can be treated as state actors for purposes of § 1983 liability); see also Jackson v. Metro. Edison Co., 419 U.S. 345, 357 (1974).  Because Gouchie is a private individual and not a state actor, no federal civil rights claim or other federal cause of action against Gouchie arises out of his conduct described here.

Morgan has alleged facts concerning Gouchie's assault of him that appear to state a claim of an intentional tort under New Hampshire law.  See Silva v. Warden, 150 N.H. 372, 374, 839 A.2d 4, 6 (2003).  This court may decline to exercise supplemental jurisdiction over state law claims upon dismissing all claims as to which it has original jurisdiction.  See 28 U.S.C. § 1367(c).  Because I recommend dismissal of all claims over which this court has original jurisdiction, the court should decline to exercise supplemental jurisdiction over the tort claim asserted against Gouchie, and should dismiss it

without prejudice to Morgan's filing an action asserting that claim in a state court of competent jurisdiction.

X.   Prosecution of Gouchie

Morgan complains that Sgt. Brackett and Capt. Pelkie failed to insure that Gouchie was prosecuted for assaulting Morgan. There is no cause of action under § 1983, however, for the failure to prosecute a crime, as there is no federal constitutional right to have criminal wrongdoers brought to justice.  See Leeke v. Timmerman, 454 U.S. 83, 87 (1981); Nieves-Ramos v. Gonzalez-De-Rodriguez, 737 F. Supp. 727, 728 (D.P.R. 1990) (citing Linda R. S. v. Richard D., 410 U.S. 614, 619 (1973) ("a private citizen lacks a judicially cognizable interest in the prosecution or non prosecution of another.")). Morgan cannot, therefore, state a claim for any defendant's failure to prosecute Gouchie.

XI. Retaliation

Morgan appears to claim that SCHOC officers implied they would or could retaliate against him for filing this lawsuit. To establish a retaliation claim, Morgan must allege: (1) that the conduct which led to the alleged retaliation was protected by the exercise of a right guaranteed to him by the federal constitution or other federal law, (2) some adverse action at the hands of prison officials, and (3) a causal link between the exercise of his protected right and the adverse action.  See

Price v. Wall, 428 F. Supp. 2d 52, 55 (D.R.I. 2006); see also
McDonald v. Hall, 610 F.2d 16, 18 (1st Cir. 1979) (discussing
pleading requirements for retaliation claims by prisoners).
"[G]overnment actions, which standing alone do not violate the
Constitution, may nonetheless be constitutional torts if
motivated in substantial part by a desire to punish an
individual for exercise of a constitutional right."  Mitchell v.
Horn, 318 F.3d 523, 530 (3d Cir. 2003); see also Oropallo v.
Parrish, No. 93-1953, 1994 WL 168519, at *3 (D.N.H. May 5, 1994)
(citing Ferranti v. Moran, 618 F.2d 888, 892 n.4 (1st Cir. 1980)
("actions otherwise supportable lose their legitimacy if
designed to punish or deter an exercise of constitutional
freedoms" (internal citation omitted))).

Morgan claims that SCHOC officers made him uncomfortable by
stating that they were aware of his pending lawsuit against
SCHOC employees.  Morgan does not state that any adverse action
was taken against him by the officers, only that he felt
uncomfortable when the officers mentioned the lawsuit.  Without
an adverse action, Morgan cannot state a retaliation claim.

XII. Supervisory Liability

Morgan has alleged that defendant Dowaliby is responsible
for overseeing the conduct of SCHOC officers and employees.
Morgan states that by failing to ensure that his employees did

not violate Morgan's rights, Dowaliby is liable to Morgan for the rights violations alleged.

There is no supervisory liability in § 1983 actions based on a respondeat superior theory of liability.  See Ashcroft, ___ U.S. at ___, 129 S. Ct. at 1949.  "Supervisory liability under § 1983 cannot be 'predicated on a respondeat theory, but only on the basis of the supervisor's own acts or omissions.'"  Aponte Matos v. Toledo Davila, 135 F.3d 182, 192 (1st Cir. 1998) (citation omitted).  A supervisor must be either "a primary actor involved in, or a prime mover behind, the underlying violation."  Camilo-Robles v. Zapata, 175 F.3d 41, 43-44 (1st Cir. 1999).  In other words, "supervisory liability lies only where an affirmative link between the behavior of a subordinate and the action or inaction of his supervisor exists such that the supervisor's conduct led inexorably to the constitutional violation."  Maldonado v. Fontanes, 568 F.3d 263, 275 (1st Cir. 2009).

"[S]upervisory liability under a theory of deliberate indifference will be found only if it would be manifest to any reasonable official that his conduct was very likely to violate an individual's constitutional rights."  Id.  Here, plaintiff fails to allege that Dowaliby was even aware of the specific constitutional violations alleged.  There is no general liability of a supervisor for the acts of his employees.  Such

general responsibility is all that is alleged by Morgan.  Morgan
has therefore failed to state any actionable claim against
Dowaliby for his own acts or for actions for which he is
responsible in his supervisory capacity.

XIII. <u>Request for Emergency Relief</u>

Morgan's complaint seeks immediate action from this Court.
Morgan's request appears to be based on his assertion that while
he himself has been housed away from further assault by Gouchie,
other inmates have been subjected to Gouchie's violence since
Morgan was assaulted.  Morgan cannot, however, as a pro se
plaintiff, assert claims on behalf of anyone other than himself.
<u>See</u> 28 U.S.C. § 1654; <u>see</u> <u>also</u> LR 83.2(d) ("Persons who are not
members of the bar . . . will be allowed to appear before this
court only on their own behalf"); LR 83.6(b) ("Pro se parties
must appear personally . . . . A pro se party may not authorize
another person who is not a member of the bar of this court to
appear on his or her behalf."); <u>Herrera-Venegas v. Sanchez-
Rivera</u>, 681 F.2d 41, 42 (1st Cir. 1982) (restricting a "jail
house lawyer" to assisting, not representing, other inmates).

Further, Morgan has no standing to press claims of harms
against other individuals himself.  Article III standing is a
constitutional precondition to a federal court's jurisdiction
over a case.  <u>Wine & Spirits Retailers, Inc. v. Rhode Island</u>,
418 F.3d 36, 44 (1st Cir. 2005) (citing <u>Osediacz v. City of</u>

27

Cranston, 414 F.3d 136, 137 (1st Cir. 2005)).  The burden of establishing standing lies with the party invoking federal jurisdiction.  Wine & Spirits, 418 F.3d at 44.  In order to establish standing, the plaintiff must show that: (1) it has personally suffered some actual or threatened injury, (2) the injury can be fairly traced to the challenged conduct, and (3) the injury would likely be redressed by a favorable decision in the pending action.  Id. (citing R.I. Ass'n of Realtors v. Whitehouse, 199 F.3d 26, 30 (1st Cir. 1999).  Morgan cannot show that he has personally suffered from any actual or threatened injury from Gouchie's assaults on other inmates.[5]  Accordingly, Morgan cannot assert standing to bring such claims or obtain emergency relief on that basis.

### Conclusion

As explained above, I find that Morgan has failed to state any claim based upon federal law upon which relief might be granted.  Accordingly, I recommend that this matter be dismissed in its entirety, with prejudice, except that the tort claim arising from Gouchie's assault of Morgan should be dismissed without prejudice to Morgan's filing an action asserting that claim in a state court of competent jurisdiction.  Any objections to this Report and Recommendation must be filed

_____

[5]Morgan alleges that he fears for the safety of his family as a result of Gouchie's assault, but has offered no facts to support his stated concern that they may be in danger.

within fourteen (14) days of receipt of this notice.  See Fed.
R. Civ. P. 72(b)(2).  Failure to file objections within the
specified time waives the right to appeal the district court's
order.  See Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d
554, 564 (1st Cir. 2010); United States v. Lugo Guerrero, 524
F.3d 5, 14 (1st Cir. 2008).

_____
Landya B. McCafferty
United States Magistrate Judge

Date:  January 7, 2011

cc:  Mark Morgan, pro se

LBM:jba